NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0228n.06
Filed: March 31, 2006

No. 05-1058

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KATHLEEN A. NAWROCKI,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)　ON APPEAL FROM THE UNITED
　　　　　　Plaintiff-Appellant,　　　　　　　　)　STATES DISTRICT COURT FOR THE
　　　　　　　　　　　　　　　　　　　　　　)　EASTERN DISTRICT OF MICHIGAN
v.　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)　OPINION
UNITED METHODIST RETIREMENT　　　　　　)
COMMUNITIES, INC. d/b/a CHELSEA　　　　　　)
RETIREMENT COMMUNITY,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant-Appellee.　　　　　　　　)
_____　)

Before: KENNEDY and GIBBONS, Circuit Judges; and DONALD, District Judge.[*]

BERNICE BOUIE DONALD, District Judge.

Plaintiff-Appellant, Kathleen A. Nawrocki, appeals from a district court's grant of summary

judgment of her claim under the Family Medical Leave Act ("FMLA"). For the reasons outlined

below, we AFFIRM the ruling of the district court.

## I. BACKGROUND

Plaintiff was employed by Defendant, United Methodist Retirement Communities (UMRC),

as a certified nursing assistant from 1997 until her termination on November 23, 2001. Plaintiff's

performance evaluations established that she was "below standard" in attendance in 1998, 1999,

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee,
sitting by designation.

2000, and 2001. In 1998, Plaintiff had eighteen absences and two tardies. In 1999, she had ten absences and one tardy; and in 2000 she had eleven absences and one tardy. On her November 15, 2001, performance evaluation, Plaintiff had fourteen absences and fifty-seven tardies.

As part of her union membership, Plaintiff received a "clean slate" in October 2001 that effectively eliminated her prior "below standard" attendance record. Pursuant to the new attendance policy, effective May 1, 2001, an employee who received five "occurrences" (an unexcused absence measured by the hour, four hours in one day equals one occurrence, less than four hours is 1/3 of an occurrence) is subject to termination. By November 2001, Plaintiff had received two "occurrences" due to her one absence and three tardies on October 22, 23, 24, and 26 of 2001.

On October 27, 2001, Plaintiff experienced pain in her left ear during her shift. Later that evening, she was diagnosed as having an ear infection and prescribed an antibiotic, ear drops, and Vicodin. That same night, Plaintiff awoke from extreme pain in her left ear. She noted that her ear was swollen and red and that the redness continued down to her jaw line. The pain, redness, and swelling worsened over the next several hours and by the evening of October 28, 2001, the left side of Plaintiff's face, neck, and ears was swollen and purple.

Physician's Assistant, Raymond Mooney, who worked in the office of Dr. Raymond Cole, treated Plaintiff on October 29, 2001, for her suffering and discomfort. Mooney diagnosed Plaintiff as having edematous with significant debris, otitis exyterna, otitis media, and an allergic reaction to her ear drop prescription. He inserted an ear wick into her ear canal to increase drainage and the intake of the medication to the infection. She was told keep the wick in place for four days. He also prescribed her another antibiotic, a new ear drop prescription, and a stronger narcotic, Zydone. Plaintiff was instructed to take the Zydone regularly for two days and was prohibited from driving while taking the medication. She was instructed to stay home from work until her next visit on

2

November 1, 2001. On November 1, Raymond Mooney removed the ear wick from Plaintiff's ear and instructed her to continue taking the prescribed medication. Plaintiff informed Defendant of the developments regarding her medical condition on October 28, 29, and November 1.

Raymond Mooney completed, signed, and submitted to Defendant a UMRC drafted medical certification form regarding FMLA leave on November 5, 2001. In the relevant parts of the medical certification, Mooney stated that Plaintiff had a "Painful (L) ear infection, otitis externa with contour dermatitis to Neomycin [Plaintiff's original ear drop prescription]" and that it would not be necessary for Plaintiff to be absent from work for treatment. On November 15, 2001, Human Resources Director, Dale Cole ("Mr. Cole"), denied Plaintiff's request for FMLA leave, stating that Plaintiff's ear infection was not a "serious health condition" and that Mooney indicated in the medical certification that it was not necessary for Plaintiff to be absent from work for treatment.

Defendant assessed Plaintiff's October and November absences and tardies, including her absences on October 28, 29, 31, and November 1, under the UMRC attendance policy. This included the days Plaintiff was tardy or left her shift early on October 27, November 6, and November 7. Plaintiff was terminated for her absences and tardies pursuant to the attendance policy.

Plaintiff filed a grievance with her union on November 30, 2001. She testified during the grievance meeting and submitted a letter dated December 12, 2001, from Dr. Cole and Mooney. This letter described Plaintiff's ailment, but did not state that it was necessary for her to be absent from work. The union denied Plaintiff's grievance on January 28, 2002. After a review by the union's "Grievance Review Committee," the union decided not to take Plaintiff's grievance to arbitration.

Plaintiff filed a complaint in district court alleging that Defendant violated her rights under the FMLA on October 30, 2003. On August 2, 2004, Defendant moved for summary judgment

3

arguing, *inter alia*, that no genuine issue of material fact existed as to Plaintiff's FMLA claim because Defendant was entitled to rely on the medical certification. Plaintiff filed a response on August 26, 2004, arguing that she suffered from a serious health condition, that Defendant interfered with her right to take FMLA leave, and that Defendant retaliated against Plaintiff for taking FMLA leave. The district court held a hearing on Defendant's summary judgment motion on November 22, 2004. Plaintiff argued that 1) the employer interfered with her right to FMLA leave and that 2) the employer retaliated against the Plaintiff for taking FMLA leave by firing her. The court found that the medical certification Plaintiff submitted to Mr. Cole did not provide adequate notice to her employer that there was a medical reason for her absence and granted the motion for summary judgment.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. When reviewing a district court's decision to grant a motion for summary judgment, the appellate court must conduct the review *de novo*. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir. 1989). The appellate court "must view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." United States v. Murphy, 937 F.2d 1032, 1036 (6th Cir. 1991) (citing 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). Summary judgment is appropriate only where the "moving party has [carried] the burden of showing conclusively that no genuine issue of material fact exists." 60 Ivy Street, 822 F.2d at 1435.

Any fact in dispute must be material such that it could potentially affect the outcome. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "summary judgment will not lie

4

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving [sic] party." Murphy, 937 F.2d at 1036 (citing Anderson, 477 U.S. at 248).

### III. ANALYSIS

A. Interference Claim

The FMLA entitles a qualifying employee up to twelve weeks of unpaid leave if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). It also prohibits an employer from interfering with, restraining or denying the exercise of any right provided under the Act. See 29 U.S.C. § 2615(a)(1). To prevail on an interference claim, a plaintiff must show that 1) she is an eligible employee, 2) the defendant is an employer under the act, 3) she was entitled to leave under the FMLA, 4) she gave the employer notice of her intention to take foreseeable leave, and 5) the employer denied her FMLA benefits to which she was entitled. Cavin, 346 F.3d at 719. The parties do not dispute the first, second, and fourth prongs. However, Plaintiff appealed the district court's ruling on the third and fifth prongs on the ground that the burden shifted to Defendant to investigate her right to FMLA leave when she submitted a contradictory medical certification.

Under the FMLA, an employee is entitled to leave if she has a serious health condition that makes her unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as an illness, injury, impairment, or physical or mental condition involving continuous treatment by a healthcare provider. See 29 U.S.C. 2611. Generally, an ear infection is not considered to be a serious health condition unless complications develop. 29 C.F.R. § 825.114(c). As to Plaintiff's ear infection, complications did arise from her allergic reaction to

5

the prescribed ear drops and from the painful swelling that warranted a prescribed narcotic. Defendant does not contest whether Plaintiff had a serious medical condition. Rather, Defendant argues that there was nothing to indicate to Mr. Cole that Plaintiff could not perform the functions of her job. Plaintiff did submit a letter from her health care provider dated December 12, 2001, that indicated that Plaintiff's condition was serious and that she was incapacitated from October 28 to November 1, 2001. Under FMLA Regulations, an employee is entitled to leave if an illness involves continuing treatment by a health care provider that would likely result in a period of incapacity of more than three consecutive days. See 29 C.F.R. § 825.114(a)(2)(v); see also Miller v. AT&T Corp., 250 F.3d 820 (4th Cir. 2001) (overturning a district court order granting summary judgment against an employee who was denied FMLA leave for a ordinarily non-serious illness that left him incapacitated for over three days). The letter stated, *inter alia,* that she was seen in an emergency room on October 27, 2001, that she was initially prescribed Vicodin for her pain, that on October 29, 2001, her ear was "markedly...swollen and tender to palpitation" due to her allergic reaction, and that she returned on November 1, 2001, for a final evaluation. It is perhaps evident from the December 12, 2001, letter that Plaintiff's condition left her incapacitated during her absence in question.[*] However, the fact that this information was not conveyed to the employer in the medical certification renders the Dr. Cole's letter post-termination a nullity.

Even though Plaintiff's leave was not foreseeable, she submitted the medical certification a timely manner. See 29 U.S.C. § 2612(e)(1). Plaintiff presented her request for leave as soon as practicable under the facts and circumstances. 29 C.F.R. § 825.303(a). The timeliness of Plaintiff's

---

[*]Even this letter did not explicitly state that Plaintiff was unable to perform the functions of her job.

original medical certification is not in dispute; however, the original FMLA form did not show that Plaintiff was entitled to FMLA leave. Thus, Defendant was justified in denying this claim.

Defendant did not deny Plaintiff's FMLA rights because she did not give Defendant sufficient notice of a serious medical condition. In general, if an employer lacks sufficient information about an employee's reason for taking leave, it should inquire further to ascertain whether the employee's leave was potentially FMLA-qualifying. Cavin, 346 F.3d at 726 (employers cannot deny an employee FMLA relief for noncompliance with internal notice requirements where an employee called into the employer's security desk the day he was in a motorcycle accident). "Once an employer is given notice that an employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA." Hammon v. DHL Airways, Inc., 165 F.3d 441, 450 (6th Cir. 1999).

However an employer is entitled to rely on a "negative certification" in denying FMLA leave. See Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998). In Stoops, the employee's doctor indicated his chronic fatigue syndrome was a serious health condition, but that he was not presently incapacitated and would not have to work intermittently or on a reduced work schedule. Id. at 311. As a result, the Seventh Circuit held that the "employer does not violate the FMLA by relying upon [a negative] certification in the absence of some overriding medical evidence. Id. at 314. Additionally it noted, "that medical evidence should come from the employee in time to save his job, not during a subsequent law suit." Id.

In the instant case, the district court held that Plaintiff's contradictory medical certification relegated it to a negative certification. Although he indicated that Plaintiff had a serious health condition, Mooney answered "no" on the medical certification form as to whether it was necessary

7

for the employee to be absent from work for treatment. At most, the medical certification indicated that Plaintiff requested an intermittent work schedule, but it was grossly insufficient in explaining her cumulative five day absence. As a result, Defendant was entitled to rely on the face of the certification without further inquiry. Even though Plaintiff submitted the December 12, 2001, letter during the grievance process, Defendant was not required to rely on the letter because it never stated that Plaintiff had needed to be absent from work. Since Plaintiff's medical certification failed, at a minimum, to place Defendant on notice that she qualified for FMLA leave, it cannot be said that she was denied FMLA rights.

B. Retaliation

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. § 2615(a)(2). To establish a claim of retaliation for asserting FMLA rights, a plaintiff may apply the McDonnell Douglas framework if there is no direct evidence of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001). To make out a *prima facie* case of discrimination the plaintiff must show 1) he availed himself of a protected right under the FMLA, 2) he was adversely affected by an employment decision, and 3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. Hodgens v. General Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Skrjanc, 272 F.3d 309, 315. Once the defendant does this, the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. Id.

8

Plaintiff has failed to show that Defendant's legitimate, non-discriminatory reason was a pretext for discrimination. For her *prima facie* case, Plaintiff established that she requested medical leave for her ear infection, she was terminated, and that her discharge was based upon Defendant's attendance policy that accounted the days Plaintiff missed as inexcusable absences. Defendant argued that "there were affirmative representations by the healthcare provider in the certification establishing that [P]laintiff did not qualify for leave" as its legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff does not dispute that if her leave did not qualify under the FMLA, the attendance policy was properly applied in her case resulting in her termination. As explained, evaluating the medical certification on its face at the time of Plaintiff's discharge, it was reasonable for Defendant to infer that Plaintiff did not qualify for FMLA leave. The medical certification submitted on November 5, 2001, did not specify that Plaintiff was unable to perform the functions of her job, as required under the FMLA. Thus, at the time of termination, Plaintiff had not raised a claim under the FMLA, and she fails the first prong of the retaliation test.

## IV. CONCLUSION

For all of the reasons set forth, we affirm the district court's grant of summary judgment to Defendant.

9